Ralph M. Stone (rstone@lawssb.com)
SHALOV STONE BONNER & ROCCO LLP
485 Seventh Avenue, Suite 1000
New York, New York  10018
212.239.4340
Fax 212.239.4310

*Attorneys for Plaintiff*
[Additional Counsel on Signature Page]





# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EPSTEIN REAL ESTATE ADVISORY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>V.<br><br>BANK OF AMERICA CORPORATION, BANC OF AMERICA SECURITIES LLC, CITIGROUP GLOBAL MARKETS, INC., UBS SECURITIES, LLC, WACHOVIA CAPITAL MARKETS, LLC, RBC CAPITAL MARKETS CORP., BARCLAY'S CAPITAL, INC., GOLDMAN SACHS & CO., CREDIT SUISSE SECURITIES (USA) LLC, SG AMERICAS SECURITIES, LLC, DEUTSCHE BANK SECURITIES, INC., NOMURA SECURITIES INTERNATIONAL, INC., AMERICAN INTERNATIONAL GROUP, INC., MARTIN J. SULLIVAN, MICHAEL H. SUTTON, EDMUND S. W. TSE, ROBERT B. WILLUMSTAD, DAVID L. HERZOG and STEVEN J. BENSINGER,<br><br>        Defendants. | C.A. No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Epstein Real Estate Advisory ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding the American International Group, Inc. ("AIG"), securities analysts' reports and advisories about AIG, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of AIG Medium-Term Notes, Series AIG-FP (the "Notes"), who purchased or otherwise acquired the Notes between November 17, 2006 and the present in or traceable to their respective initial public offerings, which were performed on a continuous basis for the AIG-FP Series, from November 17, 2006 through April 10, 2008 (the "Offering"), seeking remedies under the Securities Act of 1933 (the "Securities Act").

2.     The Notes were issued by AIG and the ability of the Notes' holders to recover their invested principal and interest on the Notes was, and is dependent, in material part, on the creditworthiness, credit standing and overall financial condition of AIG.  AIGs stated use of proceeds from sales of each of the AIG-FP Notes (Series FP-1 through FP-59) was to provide loans to its subsidiary, AIG Financial Products Corporation ("AIGFP") or its subsidiaries.

3.     The Complaint alleges that, in connection with the Registration Statement, Prospectus, and Prospectus Supplements and Pricing Supplements used in the offer and sale of

the Notes (the "Offering Materials"), defendants failed to disclose: (1) that the discussion of "Risk Factors" in the Prospectus was insufficient in that it did not warn of the extent to which the Notes would be subject to the credit risk of AIG, and the extent to which the actual creditworthiness of AIG may affect the market value of the Notes; (2) that the significant exposure of AIG to the subprime mortgage market as a result of AIG's extensive holdings in subprime mortgage-backed securities, and due to AIG's position as the largest underwriter of U.S. mortgage bonds, constituted a serious and material risk to AIG's creditworthiness and credit standing; (3) that the exposure to AIG resulting from its sales of credit default swaps constituted a serious and material risk to AIG's creditworthiness and credit standing; (4) that AIG's exposure to loss related to credit protection assumed by AIGFP on portfolios of loans or debt securities was substantial; and (4) that the aforementioned serious risks to the creditworthiness, credit standing and overall financial condition of AIG adversely affected the market value of the Notes and that, as a result of the foregoing, the Notes' Offering Materials were false and misleading.

4.      As a result of defendants' wrongful acts and omissions, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

6.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v).

7.      Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act.   Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this

Judicial District.

8.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9.      Plaintiff, Epstein Real Estate Advisory, as set forth in the accompanying certification, incorporated by reference herein, purchased the Notes at artificially inflated prices during the Class Period and has been damaged thereby.

10.     Defendant Bank of America Corporation ("Bank of America") is a bank holding company having its principal executive offices located at 100 North Tyson Street, Charlotte, North Carolina.  Bank of America acquired Merrill Lynch & Company, Inc. in January 2009.  By and through its wholly owned subsidiaries, Banc of America LLC and Merrill Lynch Pierce Pierce Fenner & Smith, Inc. was designated and acted as, a sales agent for the Offerings.

11.     Defendant Banc of America Securities LLC ("Banc of America Securities") a subsidiary of Defendant Bank of America, is a Delaware Corporation headquartered at 9 West 57th Street, New York, NY 10019.  Banc of America Securities was designated as, and acted as, a sales agent for the Offering.

12.     Defendant Citigroup Global Markets, Inc. ("Citigroup") is a Delaware Corporation headquartered at 388 Greenwich Street, New York, NY 10013.  Citigroup was designated as, and acted as, a sales agent for the Offering.

13.     Defendant Morgan Stanley & Co., Inc. ("Morgan Stanley") is an investment banking firm headquartered at 1585 Broadway, New York, NY 10036.  Morgan Stanley was

designated as, and acted as, a sales agent for the Offering.

14.     Defendant UBS Securities LLC ("UBS") is a subsidiary of UBS AG, a Swiss Corporation headquartered in Zurich, Switzerland.   UBS is headquartered in Stamford Connecticut.  UBS was designated as, and acted as, a sales agent for the Offering.

15.     Defendant Wachovia Capital Markets LLC ("Wachovia") is an investment banking firm headquartered at 301 South College Street, Charlotte, NC 28288.  Wachovia was designated as, and acted as, a sales agent for the Offering.

16.     Defendant RBC Capital Markets Corp. ("RBC") is an investment banking firm headquartered at One Liberty Plaza, New York, NY 10006.  RBC was designated as, and acted as, a sales agent for the Offering.

17.     Defendant Barclay's Capital, Inc. ("Barclay's") is an investment banking subsidiary of Barclays plc, a U.K. Corporation headquartered in London, England.  Barclay's is headquartered at 200 Park Avenue, New York, NY 10166.  Barclay's was designated as, and acted as, a sales agent for the Offering.

18.     Defendant Goldman Sachs & Co. ("Goldman") is an investment banking firm headquartered at 85 Broad Street, New York, NY 10004.  Goldman was designated as, and acted as, a sales agent for the Offering.

19.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse USA") is an investment banking subsidiary of Credit Suisse Group AG, a Swiss Corporation, headquartered in Zurich, Switzerland.  Credit Suisse USA is headquartered at 11 Madison Avenue, New York, NY 10010.  Credit Suisse USA was designated as, and acted as, a sales agent for the Offering.

20.     Defendant SG Americas Securities, LLC ("SG Americas") is an investment banking subsidiary of Societe Generale, a French corporation, headquartered in Paris, France.

SG Americas is headquartered at 1221 Avenue of the Americas, New York, NY 10020. SG Americas was designated as, and acted as, a sales agent for the Offering.

21.     Defendant Deutsche Bank Securities, Inc. ("DBSI") is an investment banking firm headquartered at 60 Wall Street, New York, NY. DBSI was designated as, and acted as, a sales agent for the Offering.

22.     Defendant Nomura Securities International, Inc.("Nomura") is an investment banking firm headquartered at 2 World Financial Center, New York, NY. Nomura was designated as, and acted as, a sales agent for the Offering.

23.     Defendants Bank of America, Banc of America Securities, Citigroup, Morgan Stanley, Wachovia, RBC, Barclay's, Goldman, Credit Suisse USA, SG Americas, DBSI and Nomura are collectively referred to herein as the "Sales Agent Defendants."

24.     Defendant AIG is Delaware corporation with its principal executive offices located at 70 Pine Street, New York, NY.

25.     Defendant Martin J. Sullivan ("Sullivan") was President, Chief Executive Officer and a director of AIG at the time of the Offering and signed the Registration Statement in those capacities.

26.     Defendant Michael H. Sutton ("Sutton") was at all relevant times a director of AIG, was a director at the time of the Offering, and signed the Registration Statement in that capacity.

27.     Defendant Edmund S. W. Tse ("Tse") was at all relevant times a director of AIG, was a director at the time of the Offering, and signed the Registration Statement in that capacity.

28.     Defendant Robert B. Willumstad ("Willumstad") was at all relevant times a director of AIG, was a director at the time of the Offering, and signed the Registration Statement

in that capacity.

29.     Defendant David L. Herzog  ("Herzog") served as AIG's Senior Vice President and Comptroller at the time of the Offering, and signed the Registration Statement in those capacities.

30.     Defendant Steven J. Bensinger ("Bensinger") served as AIG's Executive Vice President and Chief Financial Officer at the time of the Offering, and signed the Registration Statement in those capacities.

31.     Defendants Sullivan, Sutton, Tse, Willumstad, Herzog and Bensinger are referred to herein collectively as the "Individual Defendants."

32.     Unless specifically noted, "Defendants" refers collectively to the Sales Agent Defendants, AIG and the Individual Defendants.

33.     The Individual Defendants possessed the power and authority to control the contents of all documents regarding the Offering and presentations to investors, investment advisors, sales agents, securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Offering Materials alleged herein to be false and misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to the public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.   Additionally, the Individual Defendants signed the Registration

Statement and/or Prospectus and Supplements that incorporated by reference the language of the Registration Statement.

## SUBSTANTIVE ALLEGATIONS

34.     The Notes were first offered to the public on or about November 17, 2006 (Series AIG-FP1) pursuant to a  Registration Statement and Prospectus filed with the SEC, and a series of Prospectus Supplements and/or Pricing Supplements relating thereto, which specified the precise terms of each series of Notes issued throughout the Class Period.

35.     On July 20, 2006, AIG filed a Registration Statement with the SEC pursuant to Form S-3 covering various fixed income securities, including the Notes.  AIG also issued a Prospectus dated July 24, 2006 and a Prospectus Supplement dated October 12, 2006 in connection with the anticipated offer, sale, and issuance of its "Medium Term Notes" ("MTN's"), including the Series AIG-FP Notes that are the subject of this action.  Beginning on or about November 17, 2006, in connection with the offer, sale, and issuance of the first of the AIG-FP Notes (Series FP-1), AIG filed a Prospectus Supplement for each series of Notes offered for sale thereafter.  The documents referred to in this Paragraph, together with additional prospectus supplements and/or pricing supplements are referred to collectively herein as the "Offering Materials." The Offering Materials each incorporated by reference AIG's Registration Statement and AIG's other S.E.C. filings and financial statements contained therein.

36.     Through these Offering Materials, AIG offered for sale MTN's in the principal sum of $25,139,770,000, including the Notes, Series G MTN's and Series MP MTN's.  For each series of MTN's offered by AIG pursuant to the Prospectus and Registration Statement, AIG issued one or more prospectus or pricing supplements.  The Notes offered and sold pursuant to the Offering Materials include over $500 million AIG-FP Notes in connection with the public offerings of AIG Series FP-1 through FP-59 during the Class Period:

37.     The Offering Materials listed various risk factors concerning the Notes, including:

- various risks potentially affecting the interest rates;

- various factors potentially affecting the market value of the Notes, including supply and demand for the Notes, the issuer's right to redeem the Notes, and the creditworthiness and credit ratings of the issuer;

- the likelihood of little or no secondary market for the Notes;

- that trading by affiliates of the issuer in the U.S. Dollar swap market may impair the value of the Notes; and

- that the inclusion of compensation and projected profits form hedging in the original issue price is likely to adversely affect secondary market prices for the Notes.

38.     The Offering Materials were materially false and misleading because Defendants failed to disclose or indicate the following: (1) the extent to which the Notes would be subject to the credit risk of AIG and the extent to which the actual creditworthiness of AIG may affect the market value of the Notes; (2) that the exposure of AIG to the subprime mortgage market as a result of AIG's extensive holdings in subprime mortgage-backed securities, and due to AIG's position as the largest underwriter of U.S. mortgage bonds, constituted a serious and material risk to AIG's creditworthiness and credit standing;  (3) that the exposure to AIG resulting from its sale of credit default swaps constituted a serious and material risk to AIG's creditworthiness and credit standing; and (4) that the aforementioned serious risks to AIG's creditworthiness, credit standing and overall financial condition adversely affected the market value of the Notes.

39.     By failing to disclose the risks summarized above and failing to disclose AIG's rapidly deteriorating financial condition, putting AIG at serious risk of failure as a going concern

and in desperate need of working capital, the Offering Materials materially misrepresented the risks associated with investment in the Notes.

40.     More specifically, the Offering Materials failed to disclose certain material facts relating to AIG's exposure in connection with credit default swaps (primarily through AIGFP, the entity being loaned the funds raised through the sale of the Notes), including, without limitation, the following:

a.      that AIGFP provided credit protection by virtue of credit default swaps on a number of collateralized debt obligations;

b.      that AIGFP provided credit protection on diversified portfolios of investment grade corporate debt and collaterized loan obligations; and

c.      that certain credit default swaps contained collateral posting requirements whereby the amount of the collateral was to be determined based on the value of the security or loan referenced in the documentation for the default swap.

41.     On or about November 9, 2006, AIG filed its quarterly report Form 10-Q with the SEC (the "2006 Third Quarter 10-Q"), which was incorporated by reference into the Offering Materials. The 2006 Third Quarter 10-Q reported that the operating income in AIG's Capital Markets division – the department of AIGFP responsible for its Credit Default Swap Portfolio – increased by $1.12 billion compared to the same three-month period in 2005. Capital Markets reported an operating income of $965 million in the Third Quarter 2006 - $1.18 billion in revenues in the Third Quarter.

42.     In the Third Quarter 2006, AIG reported net income of $4.22 billion compared to the $3.19 billion reported for the Second Quarter of 2006.

43.     The statements and disclosures referenced above in the 2006 Third Quarter 10-Q were materially false and misleading in that AIG did not accurately value the liabilities in its credit derivatives portfolio, nor did it disclose the substantial and material risks presented by that portfolio.

44.     On March 1, 2007, AIG issued its Annual Report on Form 10-K for 2006 ("2006 10-K") and reported its financial results for the fourth quarter ended December 31, 2006.  The 2006 10-K was incorporated by reference into the Offering Materials.  In the fourth quarter of 2006, AIG reported net income of $3.44 billion, compared to $444 million for the fourth quarter of 2005.  Fourth quarter 2006 adjusted net income was reported as $3.85 billion compared to $376 million for the fourth quarter of 2005.

45.     The 2006 10-K described the credit risk associated with AIG's credit default swaps in such a way as to misleadingly understate the risk from those products and to overstate the security of the products as follows:

> In certain cases, the credit risk associated with a designated portfolio is tranched into different layers of risk, which are then analyzed and rated by the credit rating agencies.  Typically, there will be an equity layer covering the first credit losses in respect of the portfolio up to a specified percentage of the total portfolio, and then successive layers that are rated, generally a BBB-rated layer, an A-rated layer, an AA-rated layer, and one or more AAA-rated layers.  In transactions that are rated, the risk layer or tranche that is immediately junior to the threshold level above which AIGFP's payment obligation would generally arise is rated AAA by the rating agencies.  In transactions that are not rated, AIGFP applies the same risk criteria for setting the threshold level for its payment obligations.  *Therefore, the risk layer assumed by AIGFP with respect to the designated portfolio in these transactions is often called the "super senior" risk layer, defined as the layer of credit risk senior to a risk layer that has been rated AAA by the credit rating agencies, or if the transaction is not rated, equivalent thereto.*  (Emphasis added).

46.     The 2006 10-K also made representations concerning AIG's efforts to monitor its credit default swap portfolio to evaluate the risk exposure from those products, as follows:

> AIGFP continually monitors the underlying portfolios to determine whether the credit loss experience for any particular portfolio has caused the likelihood of

AIGFP having a payment obligation under the transaction to be greater than super senior risk. AIGFP maintains the ability opportunistically to economically hedge specific securities in a portfolio and thereby further limit its exposure to loss and has hedged outstanding transactions in this manner on occasion.

47.    The 2006 10-K also understated the risk of the credit default swaps by minimizing the possibility of AIG's payment obligations with respect to that portfolio being triggered, as follows:

> AIGFP provides such credit protection on a "second loss" basis, under which AIGFP's payment obligations arise only after credit losses in the designated portfolio exceed a specified threshold amount or level of "first losses." The threshold amount of credit losses that must be realized before AIGFP has any payment obligation is negotiated by AIGFP for each transaction to provide that the likelihood of any payment obligation by AIGFP under each transaction is remote, even in severe recessionary market scenarios.

48.    In addition to minimizing the exposure from AIG's credit default swap portfolio, AIG failed to disclose its exposure with respect to the subprime mortgage market. Further, AIG's losses in its credit default swap portfolio were not disclosed in the 2006 10-K.

49.    On May 10, 2007, AIG filed its quarterly report on Form 10-Q with the S.E.C. (the "2007 First Quarter 10-Q"), which was incorporated by reference into the Offering Materials. The 2007 First Quarter 10-Q reported net income of $4.13 billion compared to $3.20 billion for the first quarter of 2006.

50.    The 2007 First Quarter 10-Q was false and misleading in that AIG again failed to disclose losses related to its credit default swaps and its exposure to the subprime mortgage market.

51.    On August 8, 2007, AIG filed its quarterly report on Form 10-Q (the "2007 Second Quarter 10-Q"), which was incorporated by reference into the Offering Materials.

52.    The statements made in the 2007 Second Quarter 10-Q were materially false and misleading. AIG continued its failure to disclose losses in its credit default swap portfolio that

existed since at least the beginning of the Class Period.

53.     Defendants continued to minimize the risk exposure from the credit default swap portfolio, even though they knew that the market value of the portfolio had declined substantially and that the probability of defaults was clear.

54.     On November 7, 2007, AIG filed its quarterly report on Form 10-Q ("2007 Third Quarter 10-Q"), which was incorporated by reference into the Offering Materials.  The 2007 Third Quarter 10-Q reported relatively small losses in AIG's credit default swap portfolio for the applicable period (representing a very small percentage of the potential total exposure).  The 2007 Third Quarter 10-Q also minimized the reported losses, stating that the possibility of AIG having to make payments in connection with the credit default swap was minimal.

55.     The Offering Materials and the public reports of AIG referenced herein (which were incorporated by reference into the Offering Materials) were false and misleading in that they failed to disclose and/or substantially understated the losses from AIG's credit default swap portfolio, minimized the risks of default and corresponding payment obligations associated with that portfolio, and failed to disclose AIG's exposure in its credit default swap portfolio to the subprime mortgage market.

56.     By September of 2008, the toll taken on AIG's creditworthiness, credit standing and overall financial condition as a result of its exposure to the subprime mortgage market and to credit default swaps was revealed.

57.     On September 12, 2008, an Associated Press article, captioned "AIG in Freefall," reported, in material part, as follows:

> Shares of American International Group Inc. declined further Friday over continuing concerns about whether the world's largest insurer has adequate capital reserves . . . Worries about AIG's financial position intensified after being hit hard by deterioration in the credit markets amid worries that complex,

structured investments it insures will increasingly default.

Citi Investment Research analyst Joshua Shanker on Friday lowered his price target on [AIG] to $25.50 from $40 to reflect current market conditions.

"Marketplace fear of financial institution collapse is rampant," Shanker wrote in a Note to clients. "This is causing severe anxiety over the financial condition of AIG, whose stock is under pressure." The stock has lost nearly 50% of its value in the past week alone.

Credit-ratings agency Standard & Poors Ratings Services put ratings of AIG on CreditWatch with negative implications, saying the action follows a "significant" decline in AIG's share price and an increase in credit spreads on the company's debt.

58. In order to avoid a bankruptcy filing by AIG, the Federal Reserve Board ultimately authorized an emergency $85 billion line of credit to rescue AIG, in return for which the government was to receive a 79.9% stake in the company. When that original credit line proved inadequate, the loan was later supplemented by an additional $38 billion dollar lending facility.

59. In November, 2008, AIG announced that it had received a new government assistance package of $150 billion, restructuring the original credit facility, lowering the interest rate, and expanding AIG's repayment period from two years to five years.

60. When the true nature of AIG's financial condition was revealed, as described above, the market value of the Notes held by Plaintiff and Class members declined materially and substantially.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Notes between November 17, 2006 and the present date in or traceable to the Offering and who were damaged thereby (the "Class"). Excluded from the Class are

defendants, the officers and directors of the corporate defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

62.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Defendants or their transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

63.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

64.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

65.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

        (b)     whether Offering Materials misrepresented and/or failed to disclose material facts in connection with the Notes; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

66.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### FIRST CAUSE OF ACTION
### Violation of Section 11 of
### The Securities Act Against All Defendants

67.    Plaintiff repeats and realleges each and every allegation above as if set forth fully herein.  This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k.  This claim is not based on fraud.

68.    This claim is brought by Plaintiff and on behalf of other members of the Class who purchased or acquired AIG's Series FP Notes pursuant or traceable to the Offering Materials.  Each Class member purchased or acquired their Notes pursuant or traceable to the Offering Materials.  AIG is the issuer of the Notes through the Offering Materials.  The Individual Defendants are signatories to the Registration Statement.

69.    Defendants owed to Plaintiff and the Class the duty to make a reasonable and diligent investigation of the statements contained in the Offering Materials at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated to make the statements contained therein fair and accurate.

70.    None of the Defendants made a reasonable investigation or possessed reasonable

grounds for the belief that the statements contained in the Offering Materials were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

71.     Defendants issued and disseminated, caused to be issued and disseminated, participated in the issuance and dissemination of, material misstatements to the investing public contained in the Offering Materials, which represented or failed to disclose, <u>inter alia</u>, the facts set forth above.  By reason of the conduct alleged herein, each defendant violated Section 11 of the Securities Act.

72.     AIG, as issuer of the Series FP Notes, is strictly liable to Plaintiff and the Class for the material misstatements and omissions discussed above.

73.     Each of the Sales Agent Defendants as underwriters and/or sellers of AIG's Series FP Notes is liable to Plaintiff and the Class for the material misstatements and omissions discussed above.

74.     At the time Plaintiff and the Class obtained their Notes, Plaintiff and the Class had no knowledge of the facts concerning the misstatements or omissions alleged herein.

75.     This action is brought within one year after discovery of the untrue statements and omissions in the Offering Materials, and within three years of the effective date of the Offering Materials issued and used to sell the Notes.

76.     By virtue of the foregoing, Plaintiff and the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from Defendants and each of them, jointly and severally.

## SECOND CAUSE OF ACTION
### Violation of Section 12(a)(2) of
### The Securities Act Against the Sales Agent Defendants

77.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

78.    This Count is brought for violation of Section 12(a)(2) of the Securities Act, 15 U.S.C. §77(a)(2), against the Sales Agent Defendants, each of whom offered and sold AIG Series FP Notes by means of the Registration Statement and Prospectus.

79.    The Offering Materials included untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of the circumstances in which they were made, not misleading.

80.    Plaintiff and the members of the Class did not know, nor would they have known, of the untruths or omissions contained in the Offering Materials.

81.    The Sales Agent Defendants named herein were obligated to make a reasonable and diligent investigation of the statements contained in the Offering Materials to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. The Sales Agent Defendants failed to make a reasonable investigation or possess reasonable grounds for the belief that the statement contained in the Offering Materials were accurate and complete in all material respects.

82.    This claim had been brought within one year after the discovery of the untrue statements and omissions in the Offering Materials and within three years after the AIG Series FP Notes were sold to the Class in connection with the Offering.

83.    By reason of the misconduct alleged herein, Defendants named in this Count violated Section 12(a)(2) of the Securities Act and are liable to Plaintiff and the members of the

Class who purchased or acquired the Notes in the Offering, each of whom has been damaged as a result of such violations.

## THIRD CAUSE OF ACTION
### Violation of Section 15 of The Securities Act
### Against the Individual Defendants

84.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

85.     This cause of action is brought by Plaintiff pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class against the Individual Defendants.

86.     AIG is liable as an issuer under Section 11 of the Securities Act as set forth in the first cause of action herein.

87.     Each of the Individual Defendants is a control person of AIG with respect to the Offering by virtue of their positions as senior executive officers and/or directors of AIG.

88.     As a result, the Individual Defendants are liable under Section 15 of the Securities Act for AIG's primary violations of Section 11 of the Securities Act.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for relief and judgment, as follows:

(a)     Declaring this action to be a Class action properly maintained pursuant to the Federal Rules of Civil Procedure, certifying the Class, and certifying counsel as Class Counsel;

(b)     Awarding Plaintiff and the other members of the Class damages against Defendants, jointly and severally, together with interest thereon;

(c)     Awarding Plaintiff and the other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

(d)     Awarding Plaintiff and the Class such other and further relief as may be

just and proper under the circumstances.  .

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:   January 15, 2009                                    Respectfully submitted,


SHALOV STONE BONNER & ROCCO LLP


By: _Ralph M Stone_____
       Ralph M. Stone (rstone@lawssb.com)

485 Seventh Avenue, Suite 1000
New York, New York  10018
Tel. 212.239.4340
Fax 212.239.4310

Kenneth G. Gilman
   (kgilman@gilmanpastor.com)
GILMAN AND PASTOR, LLP
16 14th Avenue
Wareham, MA 02571
(508) 291-8400
(508) 291-3258 (fax)

LAW OFFICE OF PETER A. LAGORIO
Peter A. Lagorio
   (plagorio@lagoriolaw.com)
63 Atlantic Avenue
Boston, MA 02110
617-367-4200
617-227-3384

*Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Michael Epstein, on behalf of Epstein Real Estate Advisory ("Plaintiff"), declare as to the claims asserted under the federal securities laws, that:

1.      I have reviewed a class action complaint asserting securities claims arising out of the purchase of AIG Group securities and authorize you to file or join in filing this complaint on my behalf as a plaintiff and a proposed lead plaintiff in this matter.

2.      Plaintiff did not purchase the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      My transactions in the relevant AIG Group securities during the Class Period are set forth in Attachment A to this Certification.

5.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in any action under the federal securities laws except as follows:   None.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiffs pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _23_ Day of _December_ , 2008.

_Michael Epstein_
Michael Epstein

## ATTACHMENT A

**PLAINTIFF'S TRANSACTIONS IN AIG SERIES AIG-FP MEDIUM TERM NOTES DURING THE CLASS PERIOD**

| Trade Date | AIG Medium Term Note | Price | Amount | Buy/Sell |
|---|---|---|---|---|
| 5-16-07 | AIG-FP-14 | 100 | $200,000 | Buy |
| 5-17-07 | AIG-FP-14 | 100 | $200,000 | Buy |
| 5-18-07 | AIG-FP-14 | 100 | $86,000 | Buy |
| 5-24-07 | AIG-FP-16 | 100 | $100,000 | Buy |
| 7-11-07 | AIG-FP-22 | 100 | $10,000 | Buy |